[Civ. No. 60214. Second Dist., Div. Five. Mar. 4, 1981.]

MARILYN GARRETT, Plaintiff and Appellant, v.
LOS ANGELES CITY UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

---

**COUNSEL**

Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Appellant.

John H. Larson, County Counsel, and Richard K. Mason, Deputy County Counsel, for Defendants and Respondents.

---

**OPINION**

**HASTINGS, J.**—This is an appeal from a judgment denying Marilyn Garrett's (appellant) petition for a writ of mandate to compel Los Angeles City Unified School District (School District) to employ her as a teacher. Her employment was refused because she conscientiously objected to a chest X-ray required as a condition of employment.

## FACTS

Appellant first applied for employment with School District in 1973, and was informed that she would be required to have a chest X-ray. Appellant replied that she might be pregnant and was accordingly allowed to substitute an intradermal tuberculin test (skin test). She had not consulted a doctor or taken a pregnancy test at that time. Appellant was employed by School District as a substitute certificated employee.

In 1975, appellant was again asked by School District to submit to an X-ray and she made the same representation about pregnancy that she had made in 1973. She was again allowed to substitute a skin test. In May of 1976, appellant was offered a contract of probationary certificated employee by School District which offer was conditioned upon appellant submitting to an X-ray of the chest and meeting all of School District's health standards. Appellant refused to comply with the X-ray requirements and therefore it was determined that she had not been cleared for health purposes and School District refused to finalize appellant's contract to teach during the fall of 1976.

In December of 1976, appellant filed a claim with School District for breach of the aforementioned contract and in February of 1977, the claim was rejected.

Appellant filed a lawsuit seeking a preliminary and permanent injunction, writ of mandate, back salary, damages and attorney's fees. This lawsuit was first served on School District in August of 1977. No action was taken under the complaint for two years when appellant dropped the request for injunctive relief and concentrated solely upon the writ of mandate. The judgment denying the writ of mandate was entered on August 17, 1979.

At all times relevant to the case at bench pertinent provisions of the Education Code section 49406 provided as follows: "Examination for Tuberculosis. [¶] (a) Except as provided in subdivision (h), no person shall be initially employed by a school district in a certificated or classified position unless the person has submitted to an examination within the past 60 days to determine that he is free of active tuberculosis, by a physician and surgeon licensed under Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code. This examination shall consist of an X-ray of the lungs, or an approved intradermal tuberculin test, which, if positive, shall be followed by an

X-ray of the lungs...[¶] (c)... Nothing in this section shall prevent the governing board from establishing a rule requiring a more extensive physical examination than required by this section but such rule shall provide for reimbursement on the same basis as hereinafter required."

That prior to October 18, 1976, board rule 1950 provided in pertinent part as follows: "Chest X-ray Required. [¶] 1950. An X-ray of the chest shall be given to all employees—classified, unclassified, and certificated—without charge, to be repeated at two year intervals."

On October 18, 1976, school board amended its X-ray policy to provide in pertinent part as follows: "Chest X-ray Required. [¶] 1950. Upon initial employment, an X-ray of the chest shall be given to all employees—classified, unclassified and certificated—without charge. Thereafter all employees shall be required to undergo a follow-up X-ray examination or an approved intradermal tuberculin test at least once every two years....An employee who objects to the follow-up X-ray of the chest shall be given an approved intradermal tuberculin test which, if positive, shall be followed by an X-ray of the chest....An employee shall follow these prescribed procedures before health approval can be obtained."[1]

In denying the petition for writ of mandate the court made findings of fact and conclusions of law. The findings of fact important to this opinion are as follows:

"8. That one of the major concerns, if not the major concern, of Respondents' X-ray policy is the health and safety of school children, as well as fellow workers and members of the public.

"9. That medical judgment supports the Respondents' X-ray requirement as an important element of its overall employee health policy and the conclusion that the skin test, although useful as a part of the follow-up procedure, does not provide the same degree and kind of medical information that an X-ray does.

"15. That, because of her failure to submit to an X-ray of the chest, Petitioner was not cleared for health purposes and did not meet all of

---

[1]Appellant was instrumental in the adoption of this amendment. Her opening brief states: "...effective October 18, 1976, due to the efforts of appellant ... board rule 1950 was amended to delete the absolute requirement that a certificated employee had to be subjected to a chest X-ray except for initial employment."

Respondents' health standards, as required by the terms of the contract offer.

"20. That, although Petitioner had been a substitute certificated employee for the Respondent District from 1973 through 1976, and the 1976 contract offer therefore did not technically constitute 'initial employment,' the Court finds that but for Petitioner's representations regarding possible pregnancy in 1973 and in 1975, she would have been required to undergo the examination at an earlier time and that she is estopped, therefore, from making any claim that the X-ray requirement could not be imposed in 1976 as a condition of initial employment. [¶] The Court further finds that, even though the Petitioner might not be deemed to be 'initially employed' at the time of the contract offer in 1976, Petitioner was required to undergo an X-ray examination, prior to the commencement of service under the contract, by virtue of both Board Rule 1950 and the express conditions of the contract offer itself, separately and independently, neither of which were at the time limited in any way by any concept of 'initial employment.' Board Rule 1950 at the time of the offer required all employees to have a chest X-ray, without exception or reference to 'initial employment,' which phrase was not added to the rule until October of 1976, after the contract offer and after Petitioner refused to submit to an X-ray in response thereto."

Additional facts and findings of fact will be added when relevant to a particular argument that is addressed by this opinion.

APPELLANT'S CONTENTIONS ON APPEAL

1. Appellant was exempt from being subject to a chest X-ray since her probationary contract did not constitute initial employment.

2. Board policy 1950 invades appellant's right of privacy of body without the showing of external compelling state interest in violation of the Fourteenth Amendment to the federal Constitution and article I, section 1 of the California Constitution.

3. Board policy 1950 is arbitrary and unreasonable.

4. Board policy 1950 contravenes California's interest in uniform treatment of teachers.

5. Board policy 1950 violates the duty of an employer to furnish safety devices and adopt safe practices and procedures in employment.

## Discussion

1. Appellant claims that the contract offered to her in 1976, to teach as a probationary elementary teacher was not an initial employment that required her to take the chest X-ray examination. She states that there is no practical difference between a substitute teacher and probationary teacher as far as contact with the children is concerned and because school board had permitted her to act as a substitute teacher since November of 1973, without a chest X-ray it had waived the right to require her to take the same test in 1976. The trial court resolved this issue in two ways. First, it found that school board could correctly impose the X-ray requirement upon appellant in connection with the 1976 contract that hired her in a different position. Secondly, the court apparently realizing there could be some disagreement concerning the interpretation or meaning of "initial employment" made a specific finding that appellant was estopped from raising this issue. (See findings of fact 20, *supra.*)

We agree with the trial court that any question concerning initial employment is resolved by appellant's conduct when she was requested to take the examination on prior occasions. Appellant was permitted by school board to substitute the skin tests on the two previous occasions upon statements by her that she suspected that she might be pregnant. She had not been examined by a doctor nor had she taken pregnancy tests. Furthermore, in her deposition, admitted into evidence, was her statement that "I preferred the skin test" and she did not intend to submit to an X-ray "unless I had to." A lengthy discourse on the legal requirements of estoppel is unnecessary inasmuch as appellant has not challenged the trial court's finding on estoppel on any legal ground. It is clear that there is substantial evidence to support the trial court's finding of estoppel, therefore, we are required to affirm the trial court on this issue.

2. Appellant contends school board policy 1950 invades her right of privacy of her body without the showing of external compelling state interest, thereby violating the federal and California Constitutions.

Appellant concedes that the state and school board have the right to require teachers in our public schools to submit to a medical procedure to determine if the teacher is a carrier of tuberculosis. Her first argument, however, on this issue is that school board has invaded her right to privacy because the state has recognized that there are two viable

tubercular tests, one being the chest X-ray and the other the skin test. She claims she has the right to determine which test she will take. Although Education Code section 49406 provides that the examination shall be one or the other, appellant overlooks subdivision (c), *supra*, that permits a school board to establish a rule requiring a more extensive physical examination than required by the section.

Placed in evidence was the sworn declaration of Mollie K. Bersin, M. D. and director of employee medical services for School District. Her declaration supports school board's policy to require X-ray examinations on initial employment. It states that a former employee died of tuberculosis in 1954 after having exposed in excess of 100 students to tuberculosis, 6 of whom did indeed develop active tuberculosis. From 1954 through 1976 the School District's policy was that all employees would receive an X-ray upon initial employment. Her declaration then proceeds to describe in detail why the chest X-ray is more reliable and a better medical tool in diagnosis, determination of extent and character of disease and evaluation of response to treatment than the skin test. The trial court specifically found that medical judgment supports the X-ray requirement and that the skin test, although useful as a followup procedure, does not provide the same degree and kind of medical information that an X-ray does. (Findings of fact 9, *supra.*)

Appellant's first argument that school board's more severe regulation violated the right of privacy to her body lacks merit. As stated, section 49406 specifically authorizes a more extensive physical examination and the reasons for school board's requirement of the chest X-ray is supported by substantial expert testimony.

Appellant's second argument on the right of privacy issue is difficult to follow. She refers us to article I of the state Charter of the California Declaration of Rights and the general concept of privacy as stated in *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222]. She does not, however, relate these broad principles to the case at bench except to say "The State here does not seek to survey or collect data about appellant's personal beliefs. It seeks however, to circumscribe an even more profound compelling interest, specifically, the right to seek a livelihood without being required to undergo a 'fishing expedition' of her body." The answer to appellant's second argument is found in her own appellate brief filed with this court. When appellant first went to work for school board in 1973, rule 1950 provided that an X-ray of the chest was required every two years. However, effective October 18,

1976, the rule was changed due to the efforts of *appellant.* The amendment provided that an employee had to be subjected to a chest X-ray on initial employment and at least once every two years thereafter the employee had the option to elect a followup X-ray examination or a skin test examination. By this amendment appellant herself acknowledges that there is no invasion of right of privacy to the body because she supports such a test for initial employment. Inasmuch as we have concluded above that the court was correct in treating the requirement for a chest X-ray as appellant's initial test, she is merely taking the test that she espouses. ▆ Furthermore, there is well established decisional law that chest X-rays for teachers and even students is constitutional as a health measure for the protection of society. A case directly in point is *State* v. *Armstrong* (1952) 39 Wn.2d 860 [239 P.2d. 545], which is cited favorably in *Katz* v. *Superior Court* (1977) 73 Cal.App.3d 952 [141 Cal.Rptr. 234].

3. Appellant's third, fourth and fifth contentions on appeal are meritless for the same reasons stated above. Having admitted that she was influential in having rule 1950 amended in 1976, to provide for an initial X-ray examination, her remaining contentions are thin indeed. As to her third contention that the requirement is arbitrary and unreasonable, as mentioned earlier, there was expert testimony demonstrating the need for the chest X-ray. Her fourth contention that the 1950 policy contravenes California's interest in uniform treatment of teachers, is not supported by the evidence. To the contrary, the record supports the court's finding (findings of fact 19, *supra*) that appellant has not been denied the equal protection of the laws and that she has produced no evidence that all employees are not treated alike with respect to the initial X-ray requirement. Appellant's fifth contention that board's policy violates the duty of an employer to furnish safety devices, etc. must also fail. It is completely immaterial to the basic issue, namely; can school board require a chest X-ray on the initial employment of a school teacher? The answer is clearly, yes.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied March 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1981. Bird, C. J., was of the opinion that the petition should be granted.